549 A.2d 221

**Richard D. KLOPP and Sylvia J. Klopp, Appellees,**

v.

**KEYSTONE INSURANCE COMPANIES, Charles F. Grimm and the North Central Motor Club Insurance Agency.**

**Appeal of KEYSTONE INSURANCE COMPANIES, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 1988.

Filed Oct. 19, 1988.

Robert A. Gallagher, Williamsport, for appellant.

Norman Lubin, Williamsport, for Grimm and North Cent., appellees.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

DEL SOLE, Judge:

The courts of this Commonwealth have, once again, been asked to consider the question of whether a material misrepresentation contained in an application for automobile insurance will permit the insurance company to rescind the policy it issued to the applicant when the misrepresentation is later discovered. In three previous decisions the answer has been in the negative and insurers have not been allowed to rescind the policy. Following the lead of these cases, we too find that an insurer who later learns of an applicant's failure to disclose information material to the risk is not permitted to rescind the policy as a contract which is void *ab initio*.

In the instant action, Appellant, Keystone Insurance Company, issued a binder to Appellees on the same day they applied for automobile insurance. The next day, Appellee, Sylvia Klopp, was involved in an automobile accident. Within a month Appellees received from Keystone both an automobile policy with a insurance identification card, and notification that Keystone was rescinding the binder and policy accompanied by the return of Appellee's premium deposit. Keystone's refusal to provide insurance and the basis for its attempt to rescind the policy were based upon certain material misinformation supplied on the Appellees' insurance application. When presented with cross-motions for summary judgment, the trial court ruled that rescission, as opposed to cancellation, is not a remedy available to an insurer such as Appellant. The trial court's ruling obligating Keystone to insure Appellees for the accident is contested by Keystone because it maintains that there exists a common law right to rescind a policy which is based upon a misrepresentation and is void *ab initio*.

The identical claim, when presented to two separate panels of the Commonwealth Court, was rejected. In a consolidated appeal before the Pennsylvania Supreme

Court, the Commonwealth Court's decisions were affirmed. *Metro. Prop. & Liab. v. Insurance Com'r*, 517 Pa. 218, 535 A.2d 588 (1987). In an Opinion Announcing the Judgment of the Court, Justice McDermott provides sound rationale for the conclusion that Act 78, 40 P.S. §§ 1008.1–1008.11, was intended to supersede all common law rights and remedies and that the insurer was able to terminate an automobile insurance policy solely by the means provided under the statute. *See also Metro. Prop. & Liability v. Ins. Dept.*, 113 Pa.Commw.Ct. 150, 537 A.2d 53, 55 (1988). The case before the Supreme Court was heard by 6 justices and the opinion of Justice McDermott was joined by one justice. One justice concurred in the result and two justices joined in a concurring opinion authored by Chief Justice Nix. In the Concurring Opinion, Chief Justice Nix declined to agree that insurers are to be foreclosed from rescinding policies and, instead, reasoned that the Commonwealth Court's rulings should be affirmed since the misrepresentations in the two cases before the court were not material to the claimed loss. Because the Opinion of Justice McDermott was not adopted by a majority of the Court, it is not binding precedent, nevertheless its persuasive value is to be considered. *Commonwealth v. Covil*, 474 Pa. 375, 380–381, 378 A.2d 841, 844 (1977).

■ The rationale provided in the Opinion Announcing the Judgment of the Court details convincing reasons why an insurer cannot elect to rescind a policy and instead must comply with Act 78 in order to terminate a policy. The Supreme Court Opinion deals with this situation as follows: it looks to the policy and rationale behind the Act; it makes reference to limiting access to the courts; it provides expert and expeditious forums for resolving claims; it prevents unscrupulous insurers from bargaining down claims by threats of rescission; and it encourages insurers to perform better and more efficient investigations prior entering into a contract. As stated, we find this reasoning persuasive and will not seek to repeat it herein. The ground in this area

has been thoroughly plowed, we see no need to duplicate the task.[1]

■ The Opinion authored by Justice McDermott also treats and dismisses a further claim now presented by Appellant. Keystone asserts that Act 78 does not apply under the facts of this case because it returned the premium deposit and rescinded the policy and binder 56 days after the binder was issued and 36 days after issuance of the policy. Since Act 78 states that it shall not apply to policies which have been in effect less than 60 days, Appellant reasons that Act 78 has no application to the present factual situation. 40 P.S. § 1008.6(3).

This issue was also presented in the cases before the Supreme Court, and it was likewise rejected. In concluding that this claim is meritless, Justice McDermott cited an exception in the Act which requires an insurer who desires to cancel a policy within sixty days of its existence to supply the insured with a written statement of the reason for cancellation. 40 P.S. § 1008.6(3). With respect to Appellant's claim the Opinion states: "However, this argument ignores the explicit language of the exception which clearly indicates the legislative intent to govern the termination of policies even during the sixty day period. Although that language prescribes only minimal procedures to be followed, it nevertheless clearly prescribes what an insurer *must* do." *Metro. Prop. & Liab. v. Insurance Com'r, supra*, at 230, 535 A.2d at 594 (footnote omitted).

■ We now turn to Appellant's remaining claim. It rightly asserts that the trial court erred in awarding Appel-

1. Contrary to Appellant's position the fact that this case arises under the provisions of the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S.A. § 1701 *et seq.*, as opposed to the now repealed No–Fault Act, does not mandate a result different from that reached by the Supreme Court in *Metro.* In the Opinion Announcing the Judgment of the Court, the conclusion that Act 78 provides the exclusive means by which a Pennsylvania insurance company can sever its ties to an insured party was not reached based upon any provisions found in the No–Fault Act. Rather, the legislative intent and the policy concerns behind Act 78 were considered.

lees' counsel fees. Although the trial court awarded these fees, it provided no rationale for its award.

Section 1798 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A., provides for an award of reasonable attorney fees "in the event an insurer is found to have acted with no reasonable foundation." A similar provision was contained in Section 1009.107(3) of the now repealed No–Fault Act. In interpreting the terms contained in the No–Fault Act, it has been held that "an insurer lacks a reasonable basis for denying a particular claim if an appellate court has already held that such a claim is payable". *Rago v. State Farm Mut. Auto. Ins. Co.*, 355 Pa.Super. 207, 214, 513 A.2d 391, 395 (1986). "However the general rule has an exception. Where an issue ... is accorded review by the Pennsylvania Supreme Court, the insurer can assert that it possessed a reasonable basis for denying benefits before the Supreme Court rendered its decision." *Id.*, citing, *Wingeart v. State Farm Mutual Automobile Insurance Co.*, 340 Pa.Super. 420, 490 A.2d 849 (1985).

The underlying action in this case was initiated by Appellees in 1985 seeking to have their rights to coverage declared under the policy. Keystone's refusal to honor Appellees claim was made prior to the Commonwealth Court's decision on this issue announced in May of 1986. *Metropolitan Property and Liability v. Com.*, 97 Pa.Commw.Ct. 219, 509 A.2d 1346 (1986). Keystone's appeal from the trial court's ruling was filed before the Supreme Court affirmed the Commonwealth Court's ruling. Although the decision from the Pennsylvania Supreme Court was announced prior to briefing and oral argument on this appeal, as previously noted, the Supreme Court's opinion was not joined in by a majority of the Justices. Under these circumstances we find Keystone's pursuit of a favorable ruling did not lack a "reasonable basis." Further, the trial court has not provided us with *any* facts from which it could have concluded that Keystone acted in bad faith or in a dilatory, obdurate, arbitrary, or vexatious manner. *See* 42 Pa.C.S.A. § 2503. Accordingly, we conclude that the trial court erred in

awarding Appellees' attorney fees, and we vacate that portion of trial court's order which directs that Keystone be held responsible for the counsel fees incurred in this action.

Judgment affirmed in part. Judgment reversed and vacated in part. Jurisdiction relinquished.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

Although I concur in the decision of the majority to vacate the award of counsel fees, I dissent from the majority's holding that a fraudulently obtained policy of automobile insurance cannot be rescinded. In the absence of a controlling decision by the Supreme Court, I would adopt and follow the reasoning of the Concurring Opinion authored by Chief Justice Nix in *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner, Commonwealth of Pennsylvania*, 517 Pa. 218, 535 A.2d 588 (1987) and hold that an insurer may assert the well recognized right to rescind ab initio a policy of insurance upon learning that the application therefor contained misrepresentations material to the risk.

In this declaratory judgment action, the parties have stipulated to most of the facts. On February 7, 1985, Richard D. Klopp and Sylvia J. Klopp applied to Keystone Insurance Co. (Keystone) for a policy of insurance providing coverage for their 1981 Subaru station wagon. Keystone issued a binder the same day. On February 8, 1985, Sylvia Klopp was involved in a vehicular accident while driving the insured vehicle. The policy was issued and received by the Klopps on February 27, 1985.

On April 4, 1985, less than sixty days after issuance of the binder, Keystone returned the premium and gave notice that it had rescinded the policy ab initio because of material misrepresentations contained in the application. Despite requests for information regarding driving histories, the applicants failed to disclose that Richard Klopp had been issued two speeding tickets within the preceding three

years and that Sylvia Klopp had been involved in a prior accident within the same period. The parties, as part of their stipulation, agreed that these misrepresentations had been material to the risk, and that if this information had been known to Keystone, a policy of automobile insurance would not have been issued.

Whether a policy of vehicular insurance issued upon material misrepresentations by the applicant can be rescinded ab initio or merely cancelled upon discovery of the fraud, as the majority has observed, was considered by the Supreme Court in *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner, Commonwealth of Pennsylvania, supra.* With respect to this issue, however, the Court could not agree. Two justices were of the opinion that, by statute, the legislature had determined to limit an insurer's relief, where it had been fraudulently induced to issue a policy, to cancellation. Three justices, however, were of the opinion that the well recognized right to rescind ab initio under such circumstances had not been abrogated by the legislature. Nevertheless, they concurred in the decision to disallow rescission because, in their judgment, the applicant's misrepresentations had not been material to the risk. A single justice concurred in the result without opinion. Thus, although the Court's decision was unanimous, the members thereof did not agree upon the rationale for their decision. The Court's decision, therefore, does not have precedential value with respect to the issue now before this Court.

A majority of this panel would follow the opinion of the two justices who opined that the right of rescission had been abrogated by the legislature. I would follow the view that the false procurement of a policy of insurance, which may well be a criminal act, is also grounds for rescinding the policy ab initio. Any other result can serve only to encourage fraud. This, in my judgment, was not the intent of the legislature.

In the instant case, the parties are agreed, and the majority of this Court concedes, that the misrepresentations

made by the applicants pertained to their driving records and were material to the risk which Keystone was being asked to assume. Under these circumstances I would hold that Keystone is entitled to rescind its policy ab initio. To the extent that the majority of this Court holds otherwise, I respectfully dissent.